IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CULINARY SERVICES OF DELAWARE VALLEY, INC. and MARTIN CAPLAN, | : : : |
| Plaintiffs, | :  CIVIL ACTION |
| v. | : : NO. 09-1251 |
| BOROUGH OF YARDLEY, PENNSYLVANIA, ET AL.<br>Defendants. | : : : : |

## MEMORANDUM AND ORDER

**Tucker, J.**                                                                                               August    , 2009

      Presently before this Court are Defendants' Motions to Dismiss Plaintiffs' Complaint. For the reasons stated below, this Court will grant Defendants' Motions.

## BACKGROUND

      Plaintiffs in this case are Culinary Services, a Pennsylvania corporation, and its President, Martin Caplan ("Caplan"). Compl. ¶¶ 2-3. Culinary Services has developed games for establishments licensed by the Pennsylvania Liquor Control Board ("PLCB") pursuant to 40 Pa. Code § 5.32. Compl. ¶¶ 12, 14. Plaintiffs allege that the games in question are predominately games of skill, as opposed to traditional gambling slot machines. Plaintiffs make this distinction because the games do not include a random number generator, do not have predetermined outcomes, nor do they require the player to successfully complete a task. Unlike traditional gambling slot machines, the games also result in a void game or refund if the player fails to apply skill. Compl. ¶ 18.

      On March 7, 2008, Plaintiffs executed a written Pennsylvania Revenue Share Agreement ("Agreement") with the Knowles-Doyle American Legion ("American Legion"), whereby Plaintiffs

would lease two of its games to the American Legion in return for fifty percent of the net revenue generated by the games.  Compl. ¶¶ 20-21.  The Agreement provides that it terminates immediately upon notice by authorities that the games are prohibited for any reason.  Compl. ¶ 22.  The Agreement was Plaintiffs' first in Pennsylvania, but Plaintiffs allege that they intended to expand to other establishments licensed by the PLCB.  Compl. ¶ 23.

Prior to entering into the Agreement, Plaintiffs requested the opinion of the Pennsylvania Gaming Control Board ("PGCB") and the Pennsylvania State Police, Bureau of Liquor Code Enforcement ("BCLE") regarding the legality of the games.  Both entities declined to comment on the legality of the games.  Compl. ¶¶ 25-27.  Plaintiffs also informed Defendant James O'Neill ("O'Neill"), the Yardley Chief of Police, of its intention to install the games and informed O'Neill that the BCLE decline to comment.  Compl. ¶ 28.

Defendant O'Neill investigated the legality of the machines and consulted with Commander Rackovich ("Rackovich") of the Quakertown Barracks of the Pennsylvania State Police and Special Investigator Smith ("Smith") of the Pennsylvania State Police.  After these consultations, Defendant O'Neill concluded that the games were illegal.  Compl. ¶ 36.  Plaintiffs allege that neither Defendant O'Neill, Smith nor Rackovich had any training or expertise to make such a conclusion and that none had seen or played the games prior to concluding that they were illegal.  Compl. ¶¶ 45-47.  Defendant O'Neill relayed this conclusion to Defendant C. William Winslade ("Winslade"), the Yardley Borough Manager.  Compl. ¶ 33.

On or about April 4, 2008, Plaintiff Caplan met with Defendants Winslade and O'Neill to discuss Defendant O'Neill's conclusion.  Defendant O'Neill informed Plaintiff Caplan that he had concluded the games were illegal based on the advice of Rackovich and Smith.  Compl. ¶ 35.

On or about April 13, 2008, Defendant Winslade sent a letter to the American Legion stating

that Yardley Borough, Yardley Borough Police, and the Pennsylvania State Police officially declared the machines illegal.  Compl. ¶ 36.  The letter triggered the termination clause contained in the agreement, which the American Legion memorialized in a letter dated April 15.  Compl. ¶¶ 41-42.  The American Legion subsequently refused to provide Plaintiffs with a letter of recommendation to other PLCB licensed establishments.  Compl. ¶ 43.

Plaintiff Caplan again met with Defendants Winslade and O'Neill on August 27, 2008 to request rescission of the April 13, 2008 letter, and produced a formal letter the following day reasserting the request.  Compl. ¶¶ 50-51.  Defendants Winslade and O'Neill refused to rescind the April 13, 2008 letter without providing Plaintiffs any explanation.  Compl. ¶ 52.  Plaintiff Caplan subsequently appeared at the September 2, 2008 meeting of the Yardley Borough Council demanding: "(1) rescission of the April 13, 2008 letter, (2) production of evidence, or (3) direction to O'Neill to arrest him so that Plaintiffs may obtain benefit of due process."  Compl. ¶ 53.  Defendant Joseph Hunter ("Hunter"), Council President, refused to comply with Plaintiffs' demands, and supported the decision of Winslade and O'Neill.  Compl. ¶¶ 54, 57.  Hunter's statement was published in the Council minutes and is publicly available on the Borough website.  Compl. ¶ 58.

At the Council meeting, Defendant James McNamara ("McNamara"), Borough Solicitor, agreed to further investigate the games.  Compl. ¶ 59.  On September 5, Defendant McNamara sent Plaintiffs' counsel a letter stating that the Borough had no authority to declare the games were illegal and suggested Plaintiffs seek the advice of the Bucks County District Attorney's Office, to which Yardley Borough would defer.  Compl. ¶ 60.  In response, Plaintiffs again requested the rescission of the April 13, 2008 letter, to no avail.  McNamara instead suggested waiting for a response from Bucks County District Attorney's Office.  Compl. ¶¶ 62-63.  Bucks County Assistant District Attorney Waltz met with Plaintiff Caplan and Plaintiffs' counsel on September 23, 2008.  On

October 23, 2008, Waltz notified Plaintiffs' counsel that he would not give Plaintiffs an opinion regarding the games . Compl. ¶¶ 65-66.

Plaintiffs allege that the Defendants' conclusion that the games are illegal has served as a complete bar to Plaintiffs conducting their business in Pennsylvania.  Compl. ¶ 70.  The Ninth District American Legion, which represents over 45 American Legion posts, distributed information to all of its posts declaring the machines illegal.  Compl. ¶ 71.  Several other potential customers have informed Plaintiffs that, but for Defendants' declarations that the games were illegal, they would engage in business with Plaintiffs.  Compl. ¶ 72.  Plaintiff has since been unable to obtain any other customers in Pennsylvania.  Compl. ¶ 73.

Plaintiffs subsequently filed this action seeking damages for alleged violations of their procedural due process rights under the Fourteenth Amendment, tortious interference with contract, and commercial disparagement, alleging that Defendants have willfully, deliberately, and intentionally caused Plaintiffs harm.  Compl. ¶¶ 75-76, 83, 89.  Plaintiffs are also requesting that the Court issue a declaratory judgment that the games are legal under Pennsylvania law, and punitive damages for the alleged Constitutional violation.  Defendants have filed two separate motions to dismiss, claiming that Plaintiffs fail to state any claim which entitles them to relief.

## **LEGAL STANDARD**

Fed. R. Civ.  P. 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief may be granted.  When considering a 12(b)(6) motion, a court should accept as true all of a plaintiff's allegations and view all inferences that can be drawn from the allegations in the light most favorable to the plaintiff.  *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  A court should grant a Rule 12(b)(6) motion only if it appears to a certainty that no relief could be granted

under any set of facts that could be proved.  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d. Cir. 2005).  However, the Supreme Court's recent decision in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) however requires a complaint to "allege facts suggestive of the proscribed conduct" instead of alleging "mere elements of a cause of action."  *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8).  Especially when an allegation of conspiracy rests only "on descriptions of parallel conduct and not on any independent allegation of actual agreement among [the conspirators], the court must view the allegation "in light of common . . . experience" when deciding whether to dismiss.  *Twombly*, 550 U.S. at 565.  *Twombly* does not impose a probability requirement but "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the element in question.  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 545).

## DISCUSSION

A.  Count I - Violation of 42 U.S.C. §1983

Plaintiffs first allege that Defendants willfully violated Plaintiffs' procedural due process rights under the Fourteenth Amendment by depriving Plaintiffs of their liberty and property interests in operating a legitimate business.  Because Defendants were operating as Borough officials, Plaintiffs allege that Defendants, both individually and in their official capacities, and Yardley Borough are liable for damages under 42 U.S.C § 1983, which establishes civil liability for deprivation of Constitutional rights.  Plaintiffs' claim must be dismissed because 1) Plaintiffs have not been deprived of a protected property interest, and 2) Defendants are entitled to qualified immunity.

    1.  Protected Property Interest

Procedural due process requires that a person be provided with an "opportunity for some kind of a hearing" before being deprived of a protected interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n. 7 (1972). A plaintiff first however "must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 140 (3d Cir. 2000). Plaintiff claims the protected property interest in this case is the right to operate "a legitimate business free from the arbitrary deprivation by officials acting under the color of state law." Compl. ¶ 75.

For a property interest to be protected, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Such interests are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

Plaintiffs' rely primarily on two cases in support of their argument that the right to operate a legitimate business free from arbitrary deprivation is a protected property right. In *Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006), police officers under the supervision of local officials harassed the plaintiff after he pursued the transfer of a liquor license. The officers allegedly entered plaintiff's business without cause, wrongfully accused him of violating the law, misrepresented the law, conducted surveillance of plaintiff's business, subjected plaintiff to unreasonable searches and seizures, and threatened unwarranted investigations by other governmental agencies. Due to this harassment, the court did find a violation of the plaintiff's due process rights. In *Stidham v. Texas Comm'n on Private Security*, 418 F.3d 486 (5th Cir. 2005), state

officials mailed letters to customers of the plaintiff's motorcycle funeral escort business informing them that plaintiff was violating the law and they could be prosecuted after plaintiff refused to obtain a license for his business. The officials then refused to rescind the letters after the plaintiff was exonerated. The Fifth Circuit found that the plaintiff "had identified a protectible [sic] liberty interest in pursuing an occupation of his choice" and that "the defendants deprived him of this liberty interest without due process of law." *Id.*, at 491-92.

Plaintiffs' reliance on both cases is misguided for several reasons. First, the Defendants level of conduct in this case does not rise nearly to the level of that in *Thomas*. Despite Plaintiffs' conclusory allegation of willfulness on the part of the Defendants, Plaintiff's complaint contains no facts alleging "a campaign of defamation, harassment, and intimidation" as in *Thomas*, 36 F.3d at 297, or contact with multiple customers as in *Stidham*. Such allegations of conspiracy require at least some factual support. *Twombly*, 550 U.S. at 565. Defendants' conclusion that Plaintiff's games were illegal after a reasonable investigation conducted with the cooperation of the Pennsylvania State Police is hardly of the same character.

Second, the action in this case does not deprive Plaintiffs of any property right as completely or directly as in the cases Plaintiffs rely on. The "liberty to pursue a calling or occupation" is not without limits. Id. (quoting *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)). "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick*, 36 F.3d at 1259-60 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). Defendants have not directly prevented Plaintiff from conducting their business in the manner that occurred in the cases Plaintiffs rely on. It is settled law that due process does not apply to "indirect adverse effects of government action." *O'Banon v. Town Court Nursing Ctr.*, 447 U.S. 773 (1980). Additionally, in the present case there

officials mailed letters to customers of the plaintiff's motorcycle funeral escort business informing them that plaintiff was violating the law and they could be prosecuted after plaintiff refused to obtain a license for his business. The officials then refused to rescind the letters after the plaintiff was exonerated. The Fifth Circuit found that the plaintiff "had identified a protectible [sic] liberty interest in pursuing an occupation of his choice" and that "the defendants deprived him of this liberty interest without due process of law." *Id.*, at 491-92.

Plaintiffs' reliance on both cases is misguided for several reasons. First, the Defendants level of conduct in this case does not rise nearly to the level of that in *Thomas*. Despite Plaintiffs' conclusory allegation of willfulness on the part of the Defendants, Plaintiff's complaint contains no facts alleging "a campaign of defamation, harassment, and intimidation" as in *Thomas*, 36 F.3d at 297, or contact with multiple customers as in *Stidham*. Such allegations of conspiracy require at least some factual support. *Twombly*, 550 U.S. at 565. Defendants' conclusion that Plaintiff's games were illegal after a reasonable investigation conducted with the cooperation of the Pennsylvania State Police is hardly of the same character.

Second, the action in this case does not deprive Plaintiffs of any property right as completely or directly as in the cases Plaintiffs rely on. The "liberty to pursue a calling or occupation" is not without limits. Id. (quoting *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)). "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick*, 36 F.3d at 1259-60 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). Defendants have not directly prevented Plaintiff from conducting their business in the manner that occurred in the cases Plaintiffs rely on. It is settled law that due process does not apply to "indirect adverse effects of government action." *O'Banon v. Town Court Nursing Ctr.*, 447 U.S. 773 (1980). Additionally, in the present case there

was never any direct accusation of criminal wrongdoing on the part of the Plaintiffs as in *Stidham*, 418 F.3d at 488.  Defendants' comments were limited to the legality of the machines, not Plaintiffs' liability.  Additionally, the only statements made were to the American Legion and during the Council meeting at Plaintiffs' requests.  The resulting spread of these statements, which Plaintiffs allege has resulted in the loss of numerous potential contracts, is too indirect to be protected by the Fourteenth Amendment.

Because Plaintiffs have not established as a matter of law that their constitutional rights have been violated, their § 1983 claim must be dismissed.

2. Qualified Immunity.

Qualified Immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)).  The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), established a two-part test for determining qualified immunity.  First, the court must determine whether the defendant violated a clearly established constitutional right.  Second, the court must determine whether the defendant could have reasonably believed that their conduct did not violate the right.  *Id.*; *See also Sherwood v. Mulvihill*, 113 F.3d 396, 398-399 (3d Cir. 1997).  While there is some debate regarding the order in which the two parts are to be applied, this is of no consequence under these circumstances, as the Court has already determined there was no constitutional violation.  *See Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (holding the court may only move on the second step after finding a violation under the first step); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) ("[J]udges . . . should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.")

Because the Court concludes that no protected property right exists under these circumstances, Defendants are entitled to qualified immunity under the first prong of the *Saucier* test. However, assuming for the sake of argument that such a right did exist and was violated, Defendants are still entitled to qualified immunity, as their mistake was reasonable under the circumstances.

First, procedural due process does not so clearly protect the right to operate a business that Defendants must have known their actions violated the Fourteenth Amendment. Even if the right to operate a legitimate business were clearly established, Plaintiffs' argument that an objectively reasonable official could not have believed that his conduct did not violate the law is unpersuasive. Even taken in the light most favorable to Plaintiffs, there is no evidence that Defendants "engaged in a pattern of conduct to destroy" Plaintiffs' business. Plaintiffs allege no facts that suggest that Defendants willfully and without good faith infringed on Plaintiffs' rights. After *Twombly*, mere allegations that Defendants violated Plaintiffs' constitutional rights are not sufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 565.

Plaintiffs also fail to establish that the business in question was clearly legitimate. While Plaintiffs emphasize the fact that no government body has declared the games illegal, Plaintiffs do not point to a single entity that has declared the games legal either. Further, Plaintiffs also admit that the games look like traditional slot machines. Consequently, Defendants' conduct, which included consultation with representatives from the Pennsylvania State Police, cannot be considered wholly arbitrary. While Plaintiffs are understandably convinced that their games are legal, there is no evidence that Defendants could not have reasonably reached a different conclusion.

9

Because there is no clearly established right, no clear violation of that right, and insufficient allegations that Defendants knew or should have known that they were violating that right, Defendants are entitled to qualified immunity, and Plaintiffs' claim for a violation of § 1983 must be dismissed.

B.  Counts II & III – Tortious Interference with Contract and Commercial Disparagement

Next, Plaintiffs allege that Defendants tortiously interfered with Plaintiffs' contractual relationship with the American Legion.  Plaintiffs allege that Defendants, by making statements to the American Legion that the games were illegal, willfully brought about the termination of the contractual relationship between Plaintiffs and the American Legion.  Plaintiffs also state a claim of commercial disparagement based on the statements made by Defendants to the American Legion directly, and to the general public through the Borough website, that the games were illegal. Plaintiffs claim Defendants intended that the publication of the allegedly false statements would cause Plaintiffs pecuniary loss or that Defendants should reasonably have know that such loss would occur.

Here, both of Plaintiffs' claims must fail because Plaintiffs are immune from such claims under the Pennsylvania Tort Claims Act.  The Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541-8545, protects local agencies and their employees from liability for "injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  § 8541.  Liability can only be imposed against an agency or its employee if 1) damages would be recoverable against a person not protected by the PSTCA, and 2) the injury was caused by the negligent acts of the agency or its employee within the scope of his employment related to one of eight enumerated exceptions.  §8542(a).  Those exceptions are: 1) vehicle liability;

10

2) care, custody, or control of personal property; 3) real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody, or control of animals.  § 8542(b).  The eight exceptions are to be narrowly interpreted.  *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1122 (Pa. 1987).  The plaintiff also has the burden of proving the negligent act falls into one of the enumerated exceptions.  *Tyree v. City of Pittsburgh*, 669 A.2d 487, 490 (Pa. Commw. Ct. 1995) (citing *Santori v. Snyder*, 656 A.2d 443 (Pa. Commw. Ct. 1994)).

The PSTCA does not however provide immunity in cases "when it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."  § 8550.  "Willful misconduct" for the purposes of the PSTCA is synonymous with "intentional tort."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 291-92 (Pa. 1994) (citing *King v. Breach*, 540 A.2d 976 (Pa. 1988); *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995) (citing *Kuzel v. Krause*, 658 A.2d 856 (Pa. Commw. Ct. 1995)).

Plaintiffs do not dispute that Defendants' actions do not fall under any of the enumerated exceptions to the PSTCA, but assert that the PSTCA is inapplicable due to Defendants' willful and intentional conduct as alleged in Plaintiffs' complaint.  However, Plaintiffs are incorrect in asserting that their complaint sufficiently alleges facts that would support a conclusion that Defendants' actions were willful and intentional for the purposes of § 8550.  Plaintiffs do allege that Defendants "acted willfully or in such a way that they desired to bring about the termination of [the Agreement] by the Yardley American Legion and to cause the accompanying damages . . . ."  Compl. ¶ 44.  Yet, after *Twombly*, such an allegation is insufficient.  "After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 563 n.8).  Simply claiming Defendants acted willfully and intentionally is not

enough to survive a motion to dismiss.  The additional factual averments Plaintiffs point to are also insufficient to establish willfulness.  The Court agrees with Defendants that, even in light of Defendant McNamara's statement that the Borough was in no position to determine the legality of the machines, Defendants' actions were at most negligent.  Defendants reasonably based their opinions on the information available to them, including the recommendations of two members of the Pennsylvania State Police.  Even if it is accepted as true that Defendants were not qualified to make public their opinion that the games were illegal, Plaintiffs allege no facts that suggest that Defendants either knew their conduct was unlawful or intended to cause Plaintiffs harm.  Therefore, Defendants are immune under the PSTCA and the claims for tortious interference with contract and commercial disparagement must be dismissed.

C.  Count IV - Declaratory Judgment

Finally, in Count IV of the complaint, Plaintiffs state that an actual case or controversy exists regarding the legality of the games in question, and seek a declaratory judgment that the games in question are legal under the laws of the Commonwealth of Pennsylvania.  However, Defendants argue that the Court should deny Plaintiffs request because Plaintiffs have failed to join indispensable parties as required Fed. R. Civ. P. 19.  This Court agrees with Defendants.

Rule 19 requires that an absent party be joined in the litigation where (1) complete relief cannot be afforded in the party's absence, and (2) the absent party's ability to protect their interest will be impaired or impeded, or that party may be exposed to inconsistent or multiple judgments.

Here, Defendants correctly point out that Plaintiffs have identified the absent parties that will undoubtedly be affected by the issuance of a declaratory judgment regarding the legality of the games which are the subject of this litigation.  These parties include the Commonwealth of

Pennsylvania, Pennsylvania Gaming Control Board, Pennsylvania State Police, Bureau of Liquor Code Enforcement, Pennsylvania Attorney General Office, and the District Attorney of Bucks County, Pennsylvania, most of whom are involved in enforcing Pennsylvania's gaming laws in establishments where liquor is served.  More importantly, the absent entities mentioned are Commonwealth of Pennsylvania entities or officials, entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution.  As a result, an action against these entities or officials in federal court is barred, unless these entities waive immunity, or there is an abrogation of immunity.  Neither have occurred.

Clearly, a declaratory judgment on the issue of the legality of the games issued without the absent parties would serve to prejudice those parties.  Further, without waiver by these absent parties, which is unlikely, they cannot be joined in this action.  Given the absence of critical parties, and the fact that Plaintiffs are free to initiate an action for declaratory judgment in state court where the absent parties can be properly joined, a dismissal of Count IV is warranted.  Therefore, the Court will deny Plaintiffs' request for declaratory judgment.